

# THE ATTORNEY GENERAL

# OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

AUSTIN 11, TEXAS

August 11, 1952

Hon. G. Frank Williams
Firemen's Pension Commissioner
702 Tribune Building
Austin, Texas

Opinion No. V-1506

Re: Effect of a marriage
and subsequent annul-
ment thereof upon the
pension eligibility of
a fireman's widow.

Dear Mr. Williams:

Your request for an opinion reads in part as
follows:

"The Pension Law specifies that upon the
death of a Fireman who is drawing a pension,
his widow shall receive her pro rata part of
his pension, . . . 'so long as she remain a
widow. . . .'

"We have a widow who drew her pro rata
part of her husband's pension for approximate-
ly five months; she remarried and about seven
months later secured a <u>Decree of Annulment</u> in
the District Court of Tarrant County, Texas.

"The above mentioned widow has now made
application to her Local Pension Board to be
reinstated as the widow of the deceased Fire-
man and that her pension payments be resumed
inasmuch as she claims the Courts set aside
the purported marriage as 'held for naught.'"

The decree of annulment mentioned in your letter
provides:

"It is therefore Ordered, Adjudged and
Decreed by the court that the purported mar-
riage entered into between the plaintiff and
defendant on or about the 5th day of July,
1951, be, and the same hereby is, dissolved,
annulled, set aside and held for naught because
of the natural and incurable impotence of de-
fendant at the time of the purported marriage

and any and all other grounds alleged in plaintiff's petition, and that said marriage is in nowise binding upon the plaintiff."

Your question is whether after the annulment decree above mentioned the widow is entitled to reinstatement of the pension.

Article 4628, V.C.S., provides that:

"The marriage relation may be dissolved where the causes alleged therefor shall be natural or incurable impotency of body at the time of entering into the marriage contract, or any other impediment that renders such contract void, and the court may decree the marriage to be null and void."

Section 12 of Article 6243e, V.C.S., provides:

"If any member of any department, as herein defined, who has been retired on allowance because of length of service or disability, shall thereafter die from any cause whatsoever; or if while in service, any member shall die from any cause growing out of and/or in consequence of the performance of his duty; or shall die from any cause whatsoever after he has become entitled to any allowance or pension certificate and shall leave surviving a widow, a child or children under the age of eighteen (18) years or a dependent parent, said Board of Trustees shall order paid a monthly allowance as follows: (a) to the widow, so long as she remain a widow and provided she shall have married such member prior to his retirement, a sum equal to one-third of the average monthly salary of the deceased at the time of his retirement on allowance or death; . . ." (Emphasis added.)

The Texas Courts have not considered the effect of the annulment of a second marriage upon the status of the widow from a previous marriage. An annulment is distinguished from a divorce in that a "suit for annulment presumes that there never was a valid marriage and that therefore it should be declared void, while a suit for divorce presumes a valid marriage, but asks that that relation be dissolved for postnuptial causes." Garcia v.

Garcia, 232 S.W.2d 782, 783 (Tex. Civ. App. 1950). A decree of annulment contemplates the existence at the time of making the marriage contract of an impediment sufficient to render the marriage contract void.

In other jurisdictions it is almost invariably the law that once a marriage is annulled, the decree of nullity relates back to the time the marriage was entered into, and voids it from the beginning. See 55 C.J.S. 951, Marriage, Sec. 68.

Pursuing this line of reasoning, courts have held, with respect to annulled marriages, that where, under a statute, marriage will legitimize a prior born child, the child remains illegitimate if the marriage is annulled. In re Moncrief's Will, 235 N.Y. 390, 139 N.E. 550 (1923). A wife is entitled to resumption of alimony payments from her first husband after a decree annulling her second marriage. Sleicher v. Sleicher, 251 N.Y. 366, 167 N.E. 501 (1929). After annulment of her second marriage, a woman is restored to her status as a widow entitled to workman's compensation payments. Southern R. Co. v. Baskette, 175 Tenn. 253, 133 S.W.2d 489 (1939).

In the Illinois case of People ex rel. Byrnes v. Retirement Board, 272 Ill. App. 59 (1933), it was held that a firemen's widow is entitled to resumption of her pension payments after annulment of her second marriage on grounds of impotency under a statute providing the pension should "cease if such widow again marries." The court quoted with approval the following language from another case regarding an annulled marriage:

> ". . . annulment, when decreed, puts an end to it from the beginning . . . (Omitting cases cited.) It is not dissolved as upon divorce. It is effaced as if it had never been."

The court quoted also from Tiffany on Domestic Relations:

> "After a decree of nullity, however, in the lifetime of the parties, the marriage is void ab initio, and not merely from the date of the decree. . . . In other words, it is just as though no marriage had ever taken place."

This case is, of course, directly in point on your question.

Nevertheless, some courts have recognized that strict adherence to the doctrine of "relation back" of nullity can produce unjust results, particularly upon persons not party to the annulment proceeding. Therefore, the courts will in many instances refuse to apply the rule and will make exceptions to it based upon general equitable principles. See Annotation, 2 A.L.R. 2d 637. In general, the application of the rule will be withheld as to transactions concluded during the purported marriage. Callow v. Thomas, 322 Mass. 550, 78 N.E.2d 637 (1948).

There appears to be no equitable reason why the annulment of the marriage between the parties here involved should not be given effect to nullify the marriage from its inception. It is therefore our opinion that the widow, under the decree, "remained a widow" and is entitled to reinstatement to pension eligibility as a fireman's widow. In re Morten's Estate, 224 N.Y.S. 75 (Surr. Ct. 1927); Southern R. Co. v. Baskette, supra; People ex rel. Byrnes v. Retirement Board, supra.

## SUMMARY

A fireman's widow who remarries and
whose marriage is subsequently annulled
is entitled to be restored to pension eli-
gibility under Article 6243e, V.C.S.

APPROVED:

Ned McDaniel
State Affairs Division

E. Jacobson
Reviewing Assistant

Charles S. Mathews
First Assistant

RSL/LC/RT

Yours very truly,

PRICE DANIEL
Attorney General

By Royston S. Lanning
Royston S. Lanning
Assistant