Bobby L. O'NEAL, Plaintiff,

v.

R. J. REYNOLDS TOBACCO CO., Defendant.

Civ. A. No. CV480-364.

United States District Court,
S. D. Georgia,
Savannah Division.

July 1, 1981.

Fletcher Farrington, Savannah, Ga., for plaintiff.

Malcolm R. Maclean, F. Saunders Aldridge, III, Savannah, Ga., for defendant.

## ORDER

BOWEN, District Judge.

Plaintiff Bobby L. O'Neal brought this action seeking recovery under the Age Discrimination in Employment Act [ADEA]. 29 U.S.C. §§ 621 et seq. The case is presently before the Court on the motion of defendant, R. J. Reynolds Tobacco Company [RJR], for summary judgment.

Defendant, RJR, is engaged in the manufacture and sale of tobacco products and is an employer within the ambit of the ADEA. 29 U.S.C. § 630(b). It appears that, from an organizational standpoint, RJR formed the South Atlantic Sales Area [SASA] on September 1, 1976. Savannah, Georgia, the area pertinent to this litigation, was in the Charleston Division of the Winston-Salem Region of the SASA. Prior to September 1, 1976, Savannah was in the Charleston Division of the Atlanta Region. In April 1980, Savannah was reassigned to the Macon Division of the Atlanta Region, which, as newly formed, covers all Georgia areas previously assigned to the Charleston Division.

Plaintiff O'Neal, who was born on January 19, 1936, was first employed by RJR on March 6, 1961, in the position of salesman. His employment with RJR was continuous and on June 9, 1969, he was appointed Area Sales Representative [ASR], a second level job which entails personal contact with wholesalers and retail merchants to promote the sale of RJR products. O'Neal continued in this position until February 6, 1976, at which time he was terminated for the alleged violation of company rules. Plaintiff had never received written notice that his work was less than satisfactory. Later the same date, O'Neal's discharge was reduced to a reprimand; he did not lose a day's pay.

After this incident, O'Neal claims to have suffered severe emotional distress and depression, which first appeared in March, 1976. *Affidavit of Plaintiff O'Neal.* It appears that O'Neal sought treatment for his depression the same month from his physician, Dr. Melvin Berlin, and then later from a Dr. Safer. In August, 1977, plaintiff was placed on medication and was on sick leave for a period of approximately three weeks. While no significant event relating to O'Neal's employment occurred between August, 1977 and October, 1978, from October, 1978 until January, 1979, plaintiff was on sick leave for debilitating depression. Upon plaintiff's return to work in January, 1979, the next event pertinent to this litigation occurred in October, 1979.

On October 25, 1979, plaintiff was reprimanded and another employee was terminated for allegedly violating a company rule requiring an ASR to begin his first call by 8:00 a. m. Plaintiff contends that on the date and time in question, he was meeting with another ASR, R. C. Smith, concerning company business. Plaintiff argues that the 8:00 a. m. rule requires ASR employees to be on the job by 8:00 a. m., but does not necessarily mean making the first call by 8:00 a. m. Following this reprimand, plaintiff went on sick leave, and on December 14, 1979, filed a charge of age discrimination with the Equal Employment Opportunity Commission [EEOC] as follows:

R. J. Reynolds uses selective harassment to force its older employees to resign. If they will not resign, they fire them unjustly. Three years ago, just after my 40th birthday, I was terminated for no reason. After Reynolds discovered that I was seeking legal advice, I was reinstated. After that, I would from time to time receive unwarranted reprimands, after each which I was required to seek medical help.

Then, on October 25, 1979, I was given a "reprimand" for doing something that I had been instructed by my employer to do. The "reprimand" is only a pretext for the company's harassment of its higher paid older employees. My performance in the job has at all times been satisfactory. The harassment has caused me emotional distress to the point that I am under medical care, unable to work.

O'Neal returned to work from sick leave in February, 1980.

Plaintiff's continued employment with RJR was uneventful in any pertinent respect, with the exception of the administrative change in the Savannah assignment from the Charleston Division to the Macon Division. This change in divisions resulted in a new division manager overseeing O'Neal's performance. In August, 1980, upon the recommendation of the new division manager, plaintiff was given a merit pay increase.

On September 22, 1980, O'Neal's division manager and assistant division manager for the Macon Division came to Savannah and conducted an assignment analysis of O'Neal's assignment as an ASR. Following this analysis, they held a so-called "sit down session" with plaintiff on September 23, 1980, in which criticism and suggestions were made aimed at improving O'Neal's performance. As characterized in O'Neal's affidavit:

The suggestions for improvement in my work which were made at the "Sit Down" sessions would have been impossible for any person to perform. No matter how hard you tried, and no matter how much you followed their directions, you still could not do enough. I do not believe that any reasonable person could have done all the things that were requested of me and other Reynolds employees at the "Sit Down" sessions.

*Affidavit of Plaintiff* ¶ 6. The next morning plaintiff told the division manager that he had all he could take and was leaving RJR.

In this action, the central allegation of plaintiff's complaint is as follows:

This is a proceeding in equity and at law for restitution, reinstatement, general and specific affirmative injunctive relief and for damages against Reynolds for its discrimination against plaintiff with respect to his terms, conditions and privileges of employment because of his age; and because Reynolds has limited, segregated, and classified plaintiff in ways that deprive and tend to deprive him of employment opportunities and otherwise adversely affect his status as an employee because of his age, all as prohibited by the ADEA, 29 U.S.C. § 623(a).

Specifically, plaintiff avers: (1) that RJR engaged in a pattern or practice of discrimination against employees on the basis of age, which caused O'Neal to be unable to perform his duties from October 27, 1979, to February 3, 1980, and (2) that pursuant to this pattern or practice of discrimination, O'Neal was constructively discharged on September 24, 1980.

Defendant seeks summary judgment on the following grounds:

1. Plaintiff's claim of constructive discharge is barred.

2. No genuine issues of material fact exist which would support a finding that RJR engaged in a pattern or practice against employees on the basis of age.

3. Plaintiff did not suffer a constructive discharge.

4. Plaintiff did not suffer discrimination which caused him to be unable to work for a period from October 27, 1979, to February 3, 1980.

While these grounds will be considered in the order listed, some prefatory comments on the propriety of summary judgments in employment discrimination cases should first be discussed.

The appropriate standard in deciding a motion for summary judgment was recently reiterated by the Fifth Circuit:

Under Rule 56 of the Federal Rules of Civil Procedure, ... the moving party ha[s] the burden of showing the absence of a genuine issue of material fact. In considering a motion for summary judgment, the trial court has no duty or function to try or decide factual issues. Its only duty is to determine whether or not there *is* an issue of fact to be tried. In reviewing the record, all of the summary judgment materials must be viewed in the light most favorable to the non-moving party.

*Foster v. Swift & Co.*, 615 F.2d 701, 702 (5th Cir. 1980) (citations omitted). Summary judgments in employment discrimination cases are singularly suspect. As the Fifth Circuit commented: "When dealing with employment discrimination cases, which usually necessarily involve examining motive and intent, as in other cases which involve delving into the state of mind of a party, granting of summary judgment is especially questionable." *Hayden v. First National Bank*, 595 F.2d 994, 997 (5th Cir. 1979). Thus, each of the grounds for summary judgment advanced by defendant must be viewed within this special analyti-cal framework for employment discrimination cases.

I

■ Defendant's initial contention is that plaintiff is barred from prosecuting a claim of constructive discharge in this civil action since plaintiff did not file a separate administrative charge on this claim. As discussed earlier, the complaint relates to two specific instances: (1) the reprimand of October 25, 1979, and concomitant sick leave, and (2) the alleged constructive discharge on September 24, 1980. Yet, plaintiff's charge of discrimination filed with the EEOC on November 11, 1979, pertains to the events of October 25, 1979. The issue presented is whether defendant's failure to file a separate charge concerning the events of September 24, 1980, precludes recovery in this action for the alleged constructive discharge occurring on that date.

In resolving this issue, reference may be had to cases arising under Title VII, 42 U.S.C. § 2000e *et seq. See Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 587 (5th Cir. 1981). In Title VII actions, the Fifth Circuit has recognized that the administrative charge is to be liberally construed. *See Jenkins v. United Gas Corp.*, 400 F.2d 28 (5th Cir. 1968). In line with this policy, the court of appeals has adopted "a rule of reason which permits the scope of a Title VII suit to extend as far as, but not further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Terrell v. United States Pipe & Foundry Co.*, 644 F.2d 1112, 1123 (5th Cir. 1981) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970)). As commented by the district court in *Pouncy v. Prudential Ins. Co.*, 499 F.Supp. 427, 435 (S.D.Tex.1980), "jurisdiction may be extended to claims of discrimination which are like or reasonably related to allegations contained in the charge and which grow out of such allegations during the pendency of the charge before the EEOC."

In this case, plaintiff's administrative charge, filed pursuant to 29 U.S.C. § 626(d),

alleged generally that RJR "selectively harassed" employees on the basis of age and that plaintiff has from time to time received unwarranted reprimands. Certainly, the alleged constructive discharge on the basis of age is like or related to these administrative allegations. Moreover, the alleged constructive discharge of September 24, 1980, may be said to have "grown out" of the allegations of discrimination on the basis of age made in plaintiff's charge, while the charge was still pending before the EEOC. Thus, upon application of the pertinent standards in Title VII actions, the Court concludes that plaintiff's administrative charge is sufficient to confer jurisdiction in this action over the claimed constructive discharge.

## II

As a second basis for summary judgment, defendant argues that no material facts exist which would support a finding that RJR has engaged in a pattern or practice of discrimination on the basis of age. In support of this contention, defendant proffers "statistics" which purport to show that of 116 RJR employees who left the company since January 1, 1976, only ten have been over the age of forty, and that of those ten, seven retired and one left at the company's request.

■■■ While statistical evidence is certainly probative both in making a prima facie case of a pattern or practice of age discrimination, and in rebutting such a case, *see Hazelwood School District v. United States*, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977), stark statistics, in and of themselves, may not ordinarily serve as a basis for summary disposition of an employment discrimination case in favor of defendant. As plaintiff correctly points out, a company record that an employee left "voluntarily" does not establish the absence of the claimed pattern or practice of employment discrimination. Accordingly, on the record before the Court, genuine issues of material fact exist as to whether RJR engaged in a pattern or practice of employment discrimination on the basis of age.

## III

■■■ Defendant contends that there was no "constructive discharge" on September 24, 1980, as alleged in plaintiff's complaint and that RJR is entitled to summary judgment on this claim. The appropriate standard for determining whether an employee has been constructively discharged was recently recapitulated by the Fifth Circuit:

"The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee."

*Bourque v. Powell Electrical Mfg. Co.*, 617 F.2d 61, 65 (5th Cir. 1980) (quoting *Young v. Southwestern Savings & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975)).

■■■ Upon application of this standard to the facts in the record, and drawing all inferences therefrom in favor of plaintiff, the Court cannot conclude, as a matter of law, that no reasonable person would have felt compelled to resign as plaintiff did. Genuine issues of material fact exist with respect to this claim, and after a full presentation of all relevant evidence, it shall be left to the trier of fact to decide whether the " 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes should have felt compelled to resign.' " *Id.* (quoting *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir. 1977)).

## IV

■■■ As a final ground for summary judgment, defendant argues that plaintiff's alleged inability to perform his duties from October 27, 1979, to February 3, 1980, is not a redressable injury under the ADEA. The Court agrees that general damages for psychological suffering or emotional distress are not properly recoverable under the ADEA. *Dean v. American Security Ins.*

Co., 559 F.2d 1036 (1977), *cert. denied,* 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978). Yet, plaintiff is not seeking such general damages in this action, but rather is seeking lost wages occasioned by the alleged discriminatory pattern or practice of defendant as manifest in the October, 1979 reprimand. Whether discrimination on the basis of age was the motivating factor underlying the reprimand is, on the record before the Court, a question of fact for the jury.

Accordingly, based upon the foregoing discussion, defendant's motion for summary judgment is DENIED.

In reaching this holding, the Court has considered the authorities cited in defendant's supplemental letter brief of June 26, 1981. As the record now stands in this action, the Court finds that material issues of fact exist. If upon the presentation of plaintiff's case no evidence emerges to support the claimed age discrimination, then defendant may properly move for a directed verdict.

Order entered at Augusta, Georgia, this 30th day of June, 1981.